1  LAWRENCE G. BROWN
   Acting United States Attorney
2  WILLIAM S. WONG
   Assistant U.S. Attorney
3  501 I Street, Suite 10-100
   Sacramento, California 95814
4  Telephone: (916) 554-2790

**FILED** Filed in Court
3/27/09. C. Lydon.
Deputy Clerk

5

MAR 27, 2009

6

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

7

BY _____
DEPUTY CLERK

8              IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,       )   CR. No. S-06-451 EJG
                                    )
12              Plaintiff,          )   PLEA AGREEMENT
                                    )
13      v.                          )
                                    )
14  JAVARIS MARQUEZ TUBBS,          )
                                    )
15              Defendant.          )
                                    )
16  _____)

17                            I.

18                      **INTRODUCTION**

19      **A.  Scope of Agreement:**  The Superseding Indictment in this

20  case charges the defendant with 18 U.S.C. §§ 2113(a) and (d), 2 -

21  Attempted Armed Bank Robbery, Aiding and Abetting (Count One); 18

22  U.S.C. §§ 2113(a) and (d), 2 - Armed Bank Robbery, Aiding and

23  Abetting (Counts Three and Five); and 18 U.S.C. §§ 924(c)(1), 2 -

24  Use of a Firearm, Aiding and Abetting (Counts Two, Four, and Six).

25  This document contains the complete Plea Agreement between the

26  United States Attorney's Office for the Eastern District of

27  California (the "government") and the defendant regarding this case.

28  This Plea Agreement is limited to the United States Attorney's

                            1

1  Office for the Eastern District of California and cannot bind any
2  other federal, state, or local prosecuting, administrative, or
3  regulatory authorities.

4      **B. Rule 11(c)(1)(C) Specific Sentence Agreement:** The
5  government and the defendant agree that a specific sentence of one
6  hundred eighty (180) months in custody for Count Three, to run
7  concurrently to a one hundred eighty (180) months sentence for Count
8  Five, which shall run concurrently to one hundred ninety-two (192)
9  months in custody for the defendant's convictions in <u>United States</u>
10 <u>v. Javaris Marquez Tubbs</u>, CR S 05-243 EJG, of a violation of 18
11 U.S.C. §§ 2113(a), (d) and 2 - Armed Bank Robbery, and Aiding and
12 Abetting, and 18 U.S.C. § 924(c)(1) - Use of a Firearm, for a total
13 aggregate sentence of one hundred ninety-two (192) months in custody
14 would be appropriate in this case. Furthermore, the defendant
15 agrees that this Rule 11(c)(1)(C) specific sentence agreement is
16 dependent on the defendant completely and satisfactorily fulfilling
17 his obligations under the terms of the Agreement to Cooperate which
18 is set forth in paragraph II., section B. of this plea agreement.
19 Consequently, this Plea Agreement is being offered to the Court
20 pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal
21 Procedure. Under the provisions of Rule 11(c)(2) and (3), the Court
22 may accept or reject the agreement, or may defer its decision as to
23 the acceptance or rejection until there has been an opportunity to
24 consider the presentence report. If the Court accepts the Plea
25 Agreement, the Court will inform the parties that it will embody in
26 the judgment and sentence the disposition provided for in this Plea
27 Agreement. If the Court rejects this Plea Agreement, the Court
28 shall so advise the parties, allow either party the opportunity to

2

1  withdraw from this plea agreement, and advise the defendant that if
2  he persists in a guilty plea the disposition of the case may be less
3  favorable to him than is contemplated by this Plea Agreement.

## II.

## DEFENDANT'S OBLIGATIONS

6  **A.  Guilty Pleas:**  The defendant will plead guilty to Counts
7  Three and Five: 18 U.S.C. §§ 2113(a) and (d) - Armed Bank Robbery.
8  The defendant agrees that he is in fact guilty of these charges and
9  that the facts set forth in the Factual Basis attached hereto as
10 Exhibit A are accurate.

11     **B.  Agreement to Cooperate:**  The defendant agrees to cooperate
12 fully with the government and any other federal, state, or local law
13 enforcement agency, as directed by the government. As used in this
14 Plea Agreement, "cooperation" requires the defendant:  (1) to
15 respond truthfully and completely to all questions, whether in
16 interviews, in correspondence, telephone conversations, before a
17 grand jury, or at any trial or other court proceeding; (2) to attend
18 all meetings, grand jury sessions, trials, and other proceedings at
19 which the defendant's presence is requested by the government or
20 compelled by subpoena or court order; (3) to produce voluntarily any
21 and all documents, records, or other tangible evidence requested by
22 the government; (4) not to participate in any criminal activity
23 while cooperating with the government; (5) to disclose to the
24 government the existence and status of all money, property, or
25 assets, of any kind, derived from or acquired as a result of, or
26 used to facilitate the commission of, the defendant's illegal
27 activities or the illegal activities of any conspirators; and (6) to
28 agree to any continuance of judgment and sentencing requested by the

3

1  United States.

2      If the defendant commits any crimes or if any of the
3  defendant's statements or testimony prove to be knowingly false,
4  misleading, or materially incomplete, or if the defendant otherwise
5  violates this Plea Agreement in any way, the government will no
6  longer be bound by its representations to the defendant concerning
7  the limits on criminal prosecution and sentencing as set forth
8  herein.  The determination whether the defendant has violated the
9  Plea Agreement will be under a probable cause standard.  If the
10 defendant violates the Plea Agreement, he shall thereafter be
11 subject to prosecution for any federal criminal violation of which
12 the government has knowledge, including but not limited to perjury,
13 false statements, and obstruction of justice.  Because disclosures
14 pursuant to this Plea Agreement will constitute a waiver of the
15 Fifth Amendment privilege against compulsory self-incrimination, any
16 such prosecution may be premised on statements and/or information
17 provided by the defendant.  Moreover, any prosecutions that are not
18 time-barred by the applicable statute of limitations as of the date
19 of this Plea Agreement may be commenced in accordance with this
20 paragraph, notwithstanding the expiration of the statute of
21 limitations between the signing of this Plea Agreement and the
22 commencement of any such prosecutions.  The defendant agrees to
23 waive all defenses based on the statute of limitations or delay of
24 prosecution with respect to any prosecutions that are not time-
25 barred as of the date of this Plea Agreement.

26     If it is determined that the defendant has violated any
27 provision of this Plea Agreement or if the defendant successfully
28 moves to withdraw his plea:  (1) all statements made by the

4

1  defendant to the government or other designated law enforcement
2  agents, or any testimony given by the defendant before a grand jury
3  or other tribunal, whether before or after this Plea Agreement,
4  shall be admissible in evidence in any criminal, civil, or
5  administrative proceedings hereafter brought against the defendant;
6  and (2) the defendant shall assert no claim under the United States
7  Constitution, any statute, Rule 11(f) of the Federal Rules of
8  Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or
9  any other federal rule, that statements made by the defendant before
10 or after this Plea Agreement, or any leads derived therefrom, should
11 be suppressed.  By signing this Plea Agreement, the defendant waives
12 any and all rights in the foregoing respects.

13     **C.  Continuing Sentencing Date:**  The defendant agrees to
14 continue the sentencing date in this matter when requested by the
15 government.

16                         **III.**

17               **THE GOVERNMENT'S OBLIGATIONS**

18     **A.  Recommendations:**

19     **1.  Dismissal:**  The government shall move to dismiss with
20 prejudice the remaining charges alleged in the Superseding
21 Indictment at the time of sentencing if the defendant complies with
22 the terms and conditions contained in this Agreement.

23     **2.  Acceptance of Responsibility:**  The government shall
24 recommend that the defendant receive a three-level downward
25 adjustment in the base offense level pursuant to U.S.S.G. § 3E1.1(b)
26 on the condition that the defendant fully accepts responsibility for
27 his role in the offense as it relates to Counts Three and Five.  The
28 government will not recommend a downward adjustment in the base

1  offense level pursuant to U.S.S.G. § 3E1.1 for defendant's
2  convictions in <u>United States v. Tubbs</u>, CR S 05-243 EJG.

3       **3.  Sentence:**  The government will recommend a sentence of
4  one hundred eighty (180) months in custody for Count Three, to run
5  concurrently to a one hundred eighty (180) month sentence for Count
6  Five, which shall run concurrently to one hundred ninety-two (192)
7  months in custody for the defendant's convictions in <u>United States</u>
8  <u>v. Javaris Marquez Tubbs</u>, CR S-05-243 EJG, for a total aggregate
9  sentence of one hundred ninety-two (192) months in custody pursuant
10 to U.S.S.G. § 5K1.1 (substantial assistance to the government) if
11 the defendant fully cooperates and provides substantial assistance
12 to the government under this plea agreement.  The defendant agrees
13 not to seek a sentence less than that recommended by the government.

14                                **IV.**

15                        **MAXIMUM SENTENCE**

16     **A.   18 U.S.C. §§ 2113(a) and (d).**

17      The maximum sentence the Court can impose on each count charged
18 in Counts Three and Five is not more than twenty-five (25) years of
19 incarceration, a five (5) year period of supervised release, a fine
20 of Two Hundred Fifty Thousand ($250,000) Dollars, and a special
21 assessment of One Hundred ($100) Dollars.  If the defendant should
22 violate a condition of supervised release, he can be returned to
23 prison for up to three (3) years.

24     **B.   Restitution.**

25      By signing this agreement, the defendant also agrees that the
26 Court can order the payment of restitution for the full loss caused
27 by the defendant's wrongful conduct.  The defendant agrees that the
28 restitution order is <u>not</u> restricted to the amounts alleged in the

                                  6

1  specific count to which the defendant is pleading guilty.  The
2  defendant further agrees that he will not attempt to discharge in
3  any present or future bankruptcy proceeding any restitution imposed
4  by the Court.

5                              **V.**

6                   **ELEMENTS OF THE OFFENSE**

7  **A.   18 U.S.C. §§ 2113(a) and (d).**

8      The defendant is charged in Counts Three and Five of the
9  Superseding Indictment with armed bank robbery in violation of
10  Sections 2113(a) and (d) of Title 18 of the United States Code.  In
11  order for the defendant to be found guilty of that charge, the
12  government must prove each of the following elements beyond a
13  reasonable doubt:

14      First, the defendant took from employees of the bank money
15  belonging to the bank;

16      Second, the defendant used force and violence or intimidation
17  in doing so;

18      Third, the deposits of the bank were then federally insured;
19  and

20      Fourth, the defendant intentionally assaulted or put in
21  jeopardy the life of any person by the use of a dangerous weapon or
22  device in committing the offense.

23                              **VI.**

24                   **SENTENCING DETERMINATION**

25      **A. Statutory Authority:**  The defendant understands that the
26  Court must consult the Federal Sentencing Guidelines (as promulgated
27  by the Sentencing Commission pursuant to the Sentencing Reform Act
28  of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as

                              7

1  modified by <u>United States v. Booker</u> and <u>United States v. Fanfan</u>, 543
2  U.S. 420 (2005)), and must take them into account when determining a
3  final sentence.  Defendant understands that the Court will determine
4  a non-binding and advisory guideline sentencing range for this case
5  pursuant to the Sentencing Guidelines.  Defendant further
6  understands that the Court will consider whether there is a basis
7  for departure from the guideline sentencing range (either above or
8  below the guideline sentencing range) because there exists an
9  aggravating or mitigating circumstance of a kind, or to a degree,
10 not adequately taken into consideration by the Sentencing Commission
11 in formulating the Guidelines.  Defendant further understands that
12 the Court, after consultation and consideration of the Sentencing
13 Guidelines, must impose a sentence that is reasonable in light of
14 the factors set forth in 18 U.S.C. § 3553(a).

## VII.

### WAIVERS

17 **A.  Waiver of Constitutional Rights:**  The defendant understands
18 that by pleading guilty he is waiving the following constitutional
19 rights:  (a) to plead not guilty and to persist in that plea if
20 already made; (b) to be tried by a jury; (c) to be assisted at trial
21 by an attorney, who would be appointed if necessary; (d) to subpoena
22 witnesses to testify on his behalf; (e) to confront and cross-
23 examine witnesses against him; and (f) not to be compelled to
24 incriminate himself.

25 **B.  Waiver of Appeal and Collateral Attack:**  The defendant
26 agrees to waive all rights to appeal this plea and sentence and to
27 attack collaterally this plea and sentence whether by way of a
28 motion pursuant to 28 U.S.C. § 2255 or otherwise.  Furthermore, the

8

1  defendant agrees to waive all rights to appeal his convictions and
2  sentence and to attack collaterally his convictions and sentence
3  whether by way of a motion pursuant to 28 U.S.C. § 2255 or otherwise
4  in United States v. Javaris Marquez Tubbs, CR S 05-243 EJG, except
5  as to defendant's conviction for Count Two charging a violation of
6  18  U.S.C. § 924(c)(1) which the defendant specifically reserves the
7  right to appeal the sufficiency of the evidence of his conviction by
8  jury trial.

9       The defendant also gives up any right he may have to bring a
10 post-conviction attack on his conviction or his sentence in both
11 cases (i.e., CR S 06-451 EJG and CR S 05-243 EJG, except as to
12 defendant's conviction for Count Two charging a violation of 18
13 U.S.C. § 924(c)(1) which the defendant specifically reserves the
14 right to appeal the sufficiency of the evidence of his conviction by
15 jury trial).  He specifically agrees not to file a motion under 28
16 U.S.C. § 2255 or § 2241 attacking his conviction or sentence on any
17 count except Count Two in CR S 05-243 EJG.

18      If the defendant's conviction on the count to which he is
19 pleading is ever vacated at the defendant's request, or his sentence
20 is ever reduced at his request, the government shall have the right
21 to file any new charges that would otherwise be barred by this
22 agreement.  The decision to pursue this option is solely in the
23 discretion of the United States Attorney's Office. By signing this
24 agreement, the defendant agrees to waive any objections, motions,
25 and defenses he might have to the government's decision.   In
26 particular, he agrees not to raise any objections based on the
27 passage of time with respect to such charges including, but not
28 limited to, any statutes of limitation or any objections based on

9

1  the Speedy Trial Act or the Speedy Trial Clause of the Sixth
2  Amendment.

3              **VIII.**

4         **ENTIRE PLEA AGREEMENT**

5       Other than this Plea Agreement, no agreement, understanding,
6  promise, or condition between the government and the defendant
7  exists, nor will such agreement, understanding, promise, or
8  condition exist unless it is committed to writing and signed by the
9  defendant, counsel for the defendant, and counsel for the United
10 States.

11             **IX.**

12       **APPROVALS AND SIGNATURES**

13      **A.  Defense Counsel:**  I have read this Plea Agreement and have
14 discussed it fully with my client.  The Plea Agreement accurately
15 and completely sets forth the entirety of the agreement.  I concur
16 in my client's decision to plead guilty as set forth in this
17 Agreement.

18

19 DATED:  3-27-09

20                          STEVEN BAUER
                            Attorney for Defendant

21      **B.  Defendant:**  I have read this Plea Agreement and carefully
22 reviewed every part of it with my attorney.  I understand it, and I
23 voluntarily agree to it.  Further, I have consulted with my attorney
24 and fully understand my rights with respect to the provisions of the
25 Sentencing Guidelines and the sentencing factors pursuant to 18
26 U.S.C. § 3553(a) which may apply to my case.  No other promises or
27 inducements have been made to me, other than those contained in this
28 Agreement.  In addition, no one has threatened or forced me in any

10

1 | way to enter into this Plea Agreement.  Finally, I am satisfied with
2 | the representation of my attorney in this case.
3
4 | DATED:    3·27·09                          *[signature]*
5 |                                            JAVARIS MARQUEZ TUBBS
                                               Defendant
6 |     C.  **Attorney for United States:**  I accept and agree to this
7 | Plea Agreement on behalf of the government.
8 | DATED:    March 27, 2009            LAWRENCE G. BROWN
9 |                                     Acting United States Attorney
10
11 |                              By:    *[signature]*
                                         WILLIAM S. WONG
12 |                                      Assistant U.S. Attorney
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## EXHIBIT "A"

2

## Factual Basis for Plea

3
4       The parties agree that Exhibit A is only a summary of the facts
and that the government and the defendant may provide additional
facts to the Court at the time of the taking of the plea and
sentencing.

5

## Count Three - World Savings Bank

6
7       On January 7, 2005, at approximately 5:52 p.m., Neal Edward
Peterson, Jr., and Irvin Griffin entered the World Savings Bank, 301
Broadway Street, Chico, California, and pointed handguns and
8  threatened bank employees and customers with violence in order to
rob the bank of approximately $5,030.50 in U.S. currency.

9
10      After the robbery, Peterson and Griffin fled south behind the
bank through a parking lot and alleyway to a waiting light
grey/silver four door Toyota Camry driven by Javaris Marquez Tubbs.
11  Peterson and Griffin both got into the back seat area of the vehicle
and laid down.

12
13      A witness observed a vehicle matching the description of the
Toyota Camry facing east parked on 4th Street, next to the Chico
Paper Company.  In an interview with agents of the FBI, Tubbs, a
14  participant in the robbery of the World Savings Bank, confirmed that
he had parked a Toyota Camry on 4th Street, facing east (next to the
15  Chico Paper Company) and drove the vehicle eastbound away from the
bank with Peterson and Griffin hiding in the back seat area.  They
16  then drove to a nearby motel after the robbery.

17      The loss to World Savings Bank was approximately $5,030.50.
The bank was insured by the Federal Deposit Insurance Corporation at
18  the time of the robbery.

19

## Count Five - Washington Mutual Bank

20      On January 31, 2005, at approximately 1754 hours, two Black
males ran into the bank.  As Neal Edward Peterson, Jr. ordered
21  everyone in the bank to get on the floor, Peterson pointed an
object, which appeared to be a handgun and was covered in some type
22  of red cloth.  Peterson brandished the weapon and yelled at people
that he would shoot them if they moved.  Michael Blanche then jumped
23  over the counter and began removing money from the tellers' cash
drawers and putting the money in a light colored bag.  After taking
24  the money, Blanche jumped the counter again and the two robbers
exited the building through the north entrance.

25
26      Neal Edward Peterson, Jr. and Michael Blanche have admitted
that they were the two robbers who entered the Washington Mutual
Bank on Florin Road in Sacramento, California, to commit armed bank
27  robbery by brandishing a handgun.  Peterson, Blanche, and Javaris
Tubbs cased the bank for several minutes until parking briefly
28  behind the nearby Bel Air grocery store and strip mall area.  Tubbs

1  participated in the robbery by driving the getaway car.

2      Following the robbery, Peterson and Blanche ran back to the
   vehicle where Tubbs was waiting.  Peterson was carrying the money in
3  the bag.  They drove to 4102 Spindrifter Lane, where they divided
   the money.

4
       The loss to Washington Mutual Bank was approximately $9,453.00.
5  The bank was insured by the Federal Deposit Insurance Corporation at
   the time of the robbery.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28